## Case No. 5,479.

The GLEN.

[Blatchf. Pr. Cas. 375.] [1]

District Court, S. D. New York. July, 1863.

PRIZE—WRONGFUL ARREST—DISCHARGE.

Vessel and cargo discharged from seizure and restored to the claimant, with costs and damages, because of a wrongful arrest.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured at sea, June 20, 1863, by the United States gunboat Columbia, and were sent into this port for adjudication. The defence to the action is. that the vessel was a British bottom, lawfully on a voyage from Yarmouth, Nova Scotia, to Matamoras, Mexico, on the voyage upon which she was seized. The papers returned with the prize are, a certificate of British registry executed to Nehemiah K. Clements, of Yarmouth, Nova Scotia, as owner of the vessel, showing that she was built at Nova Scotia, August 4, 1859; a shipping agreement, entered into with the crew in November and December, 1862, for a voyage from Yarmouth, Nova Scotia, to a port or ports in the British West Indies, thence to a port or ports to which the vessel may lawfully go, for a term not to exceed six months, to her final discharge in Nova Scotia; a certificate of the entry and clearance of the vessel by the British vice-consul at Matamoras, April 22, 1863; a journal or log account of the voyage of the vessel from Matamoras, commencing in June, 1863; and a manifest of 84 bales of cotton from Matamoras to Nassau, N. P., dated May 23, 1863.

From the proofs in preparatorio it seems that the vessel was on her voyage from Matamoras to Nassau, but was a bad sailer, and, owing to the state of the weather, was unable to make her course across the Gulf Stream; that it was attempted by her master, with the consent of her supercargo, to carry her to the port of New York; that her master was attempting so to navigate her when she was seized; that she was not making for any other port; and that when seized she was, as was supposed, from 80 to 100 miles off Cape Hatteras. Her ship's company were all British subjects, and none of them had any interest in the vessel or cargo. The vessel was loaded with cotton alone. No reasonable suspicion against the integrity of the voyage is made to appear upon the testimony, either from her position or her lading, or the conduct of the crew previously, or when she was captured, or her consorting with or being connected with any other vessel or voyage. Nor is it indicated to the court, by any argument, brief, or suggestion on the part of the United States, that the captured vessel committed any culpable act on her voyage. It is, there-

fore, ordered and decreed, that the vessel and cargo be discharged from seizure and be restored to the claimant, with costs and damages, because of the wrongful arrest. Decree accordingly.

---

GLEN (MAIN v.). See Case No. 8,973.

GLENDALE ELASTIC FABRICS CO. (SMITH v.). See Case No. 13,050.

GLEN IRON WORKS. See Case No. 17,636.

GLENN (ATKINSON v.). See Case No. 610.

---

## Case No. 5,480.

GLENN v. HUMPHREYS.

SWIFT v. SAME.

[4 Wash. C. C. 424.] [1]

Circuit Court, E. D. Pennsylvania. Oct., 1823.

STATE INSOLVENT LAWS — CONSTITUTIONALITY — EFFECT OF DISCHARGE—PRACTICE.

1. A state insolvent law, which discharges the debt, and the person of the insolvent, is unconstitutional as to the debt, but not as to the person.

[Cited in Woodhull v. Wagner, Case No. 17,975.]

[Cited in Trustees of Pub. Schools v. City of Trenton, 30 N. J. Eq. 684.]

2. The United States are not affected by discharges under state insolvent laws.

[Cited in Cook v. Moffat, 5 How. (46 U. S.) 316.]

3. Practice of this court in discharging on common bail, where the defendant has been discharged under state insolvent laws.

Rule upon the plaintiffs to show their cause of action, and why the defendant should not be permitted to appear on common bail, having been discharged as an insolvent under the laws of the state of Maryland. The case was as follows: Swift, being a debtor to the United States in a considerable sum, applied to the secretary of the treasury to be discharged as an insolvent, upon surrendering all his estate to the United States, agreeably to the provisions of the act of congress. Swift received his discharge by an instrument under the hand and seal of the secretary, bearing date the 4th of December, 1819, and on the 6th of the same month and year, he executed to the secretary an assignment of all his estate, real, personal and mixed, for the use of the United States. The defendant was a debtor of Swift, by three notes of hand, one bearing date at Barbadoes the 17th of July, 1819, payable three years after date, at a certain bank in the city of Baltimore; and by two others, dated in Baltimore the 4th of December, 1819, payable eighteen months after date, and the 26th of October, 1819, payable

---

[1] [Reported by Samuel Blatchford, Esq.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]